**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| Lauren Vaughn,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Spartanburg County School District Five,<br>the Board of Trustees of Spartanburg<br>County School District Five,<br>and Superintendent Randall R. Gary, in<br>his individual and official capacities,<br><br>　　　　　　Defendants. | Civil Action No.:<br><br><br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

Plaintiff Lauren Vaughn, by her counsel, hereby files this Complaint against Spartanburg County School District Five ("District Five"), the Board of Trustees of Spartanburg County School District Five ("Board") and Superintendent Randall R. Gary, in his individual and official capacities, (collectively "Defendants"),

## INTRODUCTION

1.　　Plaintiff Lauren Vaughn is a decorated former Teacher Assistant of District Five. Despite outstanding evaluations, no disciplinary history, and recognition as River Ridge Elementary School's Support Staff Employee of the Year in 2021, she was terminated on September 15, 2025 solely because of an off-duty Facebook post critiquing a public figure's Second Amendment position.

2.　　District Five carried out Plaintiff's termination pursuant to District Five's official Social Media Guidelines, which caution employees that they "must be respectful and professional in *all* communications (by word, image, or other means)," regardless of setting, requiring them to "always represent the District in the best light." These provisions

1

are unconstitutionally overbroad, vague, and viewpoint-discriminatory.

3. This lawsuit challenges both (a) the termination decision and Social Media Guidelines as applied, and (b) the Social Media Guidelines policy itself as facially invalid under the First and Fourteenth Amendments (via 42 U.S.C. § 1983) and South Carolina law, including a claim for wrongful discharge in violation of public policy grounded in S.C. Code Ann. § 16-17-560.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5. This Court has supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

6. Venue is proper under 28 U.S.C. § 1391(b) because all Defendants reside in, and the events occurred in, this District and Division.

## PARTIES

7. Plaintiff Lauren Vaughn is a citizen of South Carolina, residing in Spartanburg County. She was employed as a Teacher Assistant at River Ridge Elementary School, part of District Five.

8. Defendant Spartanburg County School District Five is a public school district located and operating in Spartanburg County, South Carolina.

9. Defendant Board of Trustees of Spartanburg County School District Five is the policy making body for Defendant District Five, located and operating in Spartanburg County, South Carolina.

10. Defendant Randall R. Gary is the Superintendent of District Five, exercised final authority over Plaintiff's termination, and is sued in his individual and official

2

capacities. Upon information and belief, Defendant Randall R. Gary is a citizen and resident of Spartanburg County, South Carolina.

## FACTUAL ALLEGATIONS

11. Plaintiff was employed as a Teacher Assistant at River Ridge Elementary School for about six years prior to her termination.

12. Plaintiff consistently received outstanding performance evaluations and had no disciplinary history during her employment with District Five.

13. In fact, in 2021 Plaintiff was named River Ridge Elementary School's Support Staff Employee of the Year.

14. In congratulating Plaintiff as River Ridge Elementary School's Support Staff Employee of the Year, River Ridge Elementary School lauded Plaintiff as "the pride of River Ridge!"

15. On September 10, 2025, Plaintiff posted on her private, personal Facebook account, outside work hours and using her own device, the following text:

> "I think it's worth to have a cost of, unfortunately, some gun deaths every single year so that we can have the Second amendment to protect our other God-given Rights. That is a prudent deal. It is rational." – Charlie Kirk. Thoughts and prayers.

16. Plaintiff also said, in comments to the post, "[T]he WHOLE point here is that any time someone is killed fits [sic] a tragedy. Even someone I may not like. Even someone I disagree with. But instead of accepting it, why don't we do something about it?"

17. In further comments, Plaintiff made clear that her comment was, "I disagree with [Kirk] and think today should not have happened. I'm sorry it did."

18. She further stated that she felt

> no satisfaction here. Just heartbreak for anyone and everyone affected by gun violence and a hope that one day, enough will be enough. At the end of the day, all want the same thing—for everyone to be safe in their school, home, church, in a public place, at a rally or event, or just out in public.

19. Plaintiff's Facebook privacy settings were such that only her "friends" could view her posts; the post was not viewable by the general public.

20. Plaintiff's post did not reference District Five, River Ridge Elementary, her job duties, or students, and was not directed to District personnel.

21. Though she did not believe she had violated any policy or otherwise acted inappropriately, Plaintiff deleted the post later that same evening.

22. On or about September 12, 2025, Defendants placed Plaintiff on administrative leave solely because of her Facebook post.

23. District administrators later alleged that some parents and staff complained about Plaintiff's post; however, Defendants have never identified the number, nature, or substance of such complaints.

24. Importantly, Defendants have not documented any actual disruption to school operations.

25. On September 15, 2025, District Five conducted a pre-termination hearing and issued a final termination decision.

26. The termination letter cited GBEB (Staff Conduct), IJNDB (Technology Use), and GDQD (Support-Staff Dismissal) policies, and invoked the Social Media Guidelines that Plaintiff had recently signed.

27. The Social Media Guidelines caution employees that they "must be respectful and professional in *all* communications (by word, image, or other means),"

regardless of setting, requiring them to "always represent the District … in the best light."

28. The Social Media Guidelines are unconstitutionally overbroad, vague, and viewpoint-discriminatory, as they ban criticism but not praise, chill discussion of matters of public concern, prevent a reasonable person from determining what speech is prohibited, and substantially limit more speech than the Constitution allows.

29. Plaintiff did not believe her speech was inappropriate and never acknowledged it as such; she maintained it was political commentary on a public issue.

30. Plaintiff had no grievance rights under District policy, and the Defendants' termination constituted final action.

31. Superintendent Gary and the Board of Trustees are the final policymakers who made and ratified the decision to terminate Plaintiff.

32. Plaintiff has suffered lost wages and benefits, reputational harm, and emotional distress as a result.

**FOR A FIRST CAUSE OF ACTION**
**(Against Defendant Randall S. Gary)**
**First Amendment Retaliation (42 U.S.C. § 1983)**

33. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

34. Through her private Facebook post, Plaintiff spoke as a private citizen on a matter of public concern.

35. Plaintiff's Facebook post was visible only to her private circle of friends, not the general public, further limiting any alleged disruption.

36. Plaintiff's speech on her private Facebook page did not create any substantive disruption to Defendant District Five.

37. Plaintiff's speech on her private Facebook page did not create any interference with Plaintiff's ability to carry out her job with Defendants.

38. Plaintiff's right to speak freely about matters of public concern is protected by the First and Fourteenth Amendments to the United States Constitution.

39. Citizens have a vital interest in free and open discussion on issues of public interest and importance. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

40. The interest of a school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public. *Pickering v. Board of Education*, 391 U.S. 563, 573 (1968)

41. It is a violation of the First and Fourteenth Amendments for public employers—including Defendant Gary, acting under color of state law—to discipline or terminate an employee in retaliation for speaking out on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)

42. Defendant Gary, acting under the color of state law, terminated Plaintiff in response to her protected speech in violation of her clearly established rights under the First and Fourteenth Amendments.

43. Defendant Gary's retaliatory actions were undertaken willfully, knowingly, and in bad faith, with reckless disregard for Plaintiff's constitutional rights—rights that any reasonable public employer in Defendant Randall's position would have known were protected.

44. Upon information and belief, Defendant Gary's actions were not only

unconstitutional but also intentional, malicious, and in reckless disregard of Plaintiff's protected rights.

45. Defendant Gary is not entitled to qualified immunity for the complained of conduct.

46. Accordingly, Plaintiff is entitled to recover compensatory damages for these injuries, as well as punitive damages against Defendant Gary in his individual capacity, in an amount sufficient to deter similar unconstitutional conduct in the future.

47. Pursuant to 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects... any citizen... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."

48. Thus, Defendant Gary is fully liable to Plaintiff for her injuries resulting from his retaliation in violation of the First and Fourteenth Amendments.

49. Defendant Gary is also liable for Plaintiff's reasonable attorneys' fees and costs. 42 U.S.C. § 1988.

**FOR A SECOND CAUSE OF ACTION**
**(As to Defendant Board of Trustees of Spartanburg School District Five and Defendant Spartanburg School District Five)**
**Deliberately Indifferent Policies in Violation of the First Amendment (42 U.S.C. § 1983)**

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

51. Through her private Facebook post, Plaintiff spoke as a private citizen on a matter of public concern.

52. Plaintiff's Facebook post was visible only to her private circle of friends, not the general public, further limiting any alleged disruption.

7

53. Plaintiff's speech on her private Facebook page did not create any substantial disruption to Defendant District Five.

54. Plaintiff's speech on her private Facebook page did not create any interference with Plaintiff's ability to carry out her job with Defendants.

55. Defendants' allegation of disruption was speculative, and no substantial interference with school operations occurred.

56. Plaintiff's right to speak freely about matters of public concern is protected by the First and Fourteenth Amendments to the United States Constitution.

57. Speech regarding the Second Amendment and policy relating to gun regulation are matters of public concern.

58. Citizens have a vital interest in free and open discussion on issues of public interest and importance. *Connick v. Myers*, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983).

59. The interest of a school administration in limiting teachers' opportunities to contribute to public debate is not significantly greater than its interest in limiting a similar contribution by any member of the general public. *Pickering v. Board of Education*, 391 U.S. 563, 573 (1968).

60. Defendant District Five and Defendant Board were at all times relevant policymakers for Defendants and, in that capacity, established the policies, procedures, customs, and practices for employee social media use.

61. Defendant District Five and Defendant Board developed and maintained the Social Media Guidelines, which are deliberately indifferent to the constitutional protections of Defendants' employees.

62. Defendant District Five and Defendant Board's Social Media Guidelines are facially unconstitutional.

63. Defendant District Five and Defendant Board's Social Media Guidelines are facially unconstitutional including, but not limited to, the fact that they caution employees that they "must be respectful and professional in *all* communications (by word, image, or other means)," regardless of setting and require employees to "always represent the District in the best light," which are overbroad, vague, and viewpoint-discriminatory restrictions.

64. Defendant District Five and Defendant Board's Social Media Guidelines do not permit a reasonable person to determine what speech is prohibited.

65. Defendant District Five and Defendant Board's Social Media Guidelines are overbroad, as they regulate far more speech than the Constitution allows.

66. Defendant District Five and Defendant Board's agency-wide policies, procedures, and practices in implementing the Social Media Guidelines amount to deliberate indifference to Plaintiff's constitutional protections under the First and Fourteenth Amendment.

67. Plaintiff's termination was carried out pursuant to these official Guidelines and/or by a final policymaker enforcing them.

68. Defendant District Five and Defendant Board's deliberate and conscious enforcement of the Social Media Guidelines is the actual and proximate cause of the Plaintiff's harms.

69. Plaintiff seeks declaratory and injunctive relief, back pay, front pay or reinstatement, compensatory damages, punitive damages against individual Defendants,

and attorneys' fees under 42 U.S.C. § 1988.

## FOR A SECOND CAUSE OF ACTION
### (As to All Defendants)
### Violation of South Carolina Constitution, Art. I, § 2 (Free Speech)

70.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

71.     Article I, § 2 of the South Carolina Constitution protects freedom of speech.

72.     Defendants' termination of Plaintiff for political commentary, pursuant to the Social Media Guidelines, violated her rights under the South Carolina Constitution.

73.     Plaintiff seeks declaratory and injunctive relief on this cause of action—specifically, declarations that the Social Media Guidelines are unconstitutional and that her termination violated Art. I, § 2, with reinstatement or prospective injunctive relief.

## FOR A THIRD CAUSE OF ACTION
### (As to All Defendants)
### Wrongful Discharge in Violation of Public Policy

74.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75.     South Carolina law recognizes a tort for discharge in violation of a clear mandate of public policy.

76.     The South Carolina Legislature has expressed a clear public policy against terminating an employee for their political opinions or exercising political rights and privileges, including those guaranteed by the Constitution and laws of the United States and the Constitution and laws of South Carolina. S.C. Code Ann. § 16-17-560.

77.     Violation of S.C. Code § 16-17-560 is an offense against public policy per statute.

78. Under S.C. Code § 16-17-560, any "person who violates the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than one thousand dollars or imprisoned not more than two years or both."

79. It is a violation of public policy for an employer to discharge an employee for her political opinions or exercising political rights and privileges.

80. Plaintiff, at all times relevant to this claim, carried out the functions of her job competently.

81. Plaintiff's Facebook post was the expression of political opinions and an exercise of her political rights, made to a limited private audience rather than the general public.

82. Defendants terminated Plaintiff because of these political opinions and did so by invoking and enforcing the Social Media Guidelines, which unlawfully apply to *all* employee speech and mandate that an employee "always represent the District in the best light."

83. Therefore, Defendant's termination of Plaintiff is itself a violation of criminal law. *See Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985)

84. Enforcing these Guidelines against Plaintiff directly contravenes the public policy expressed in § 16-17-560.

85. No adequate statutory remedy exists, and the public-policy exception therefore applies.

86. As a result of Defendants' wrongful actions, Plaintiff has suffered lost wages, lost benefits, reputational harm, and emotional distress as a proximate result.

87. Plaintiff seeks reinstatement or front pay, back pay, compensatory damages, and other relief consistent with the South Carolina Tort Claims Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that Defendants' actions and the Social Media Guidelines are unconstitutional under the U.S. and South Carolina Constitutions;

B. Order reinstatement or, alternatively, award front pay;

C. Award back pay and lost benefits;

D. Award compensatory damages, and punitive damages against the individual § 1983 Defendants;

E. Award attorneys' fees and costs under 42 U.S.C. § 1988; and

F. Grant all other appropriate relief.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

s/Jack E. Cohoon

Jack E. Cohoon (Fed Bar No. 9995)
BURNETTE SHUTT & MCDANIEL, PA
P.O. Box 1929
Columbia, South Carolina 29202
Telephone: (803) 904-7914
Fax: (803) 904-7910
jcohoon@burnetteshutt.law

**ATTORNEYS FOR PLAINTIFF**

Columbia, South Carolina

September 18, 2025