IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| Lauren Vaughn, ) | C.A. No. 7:25-cv-12623-DCC |
| ) | |
| Plaintiff, ) | |
| ) | **DEFENDANTS' MEMORANDUM OF** |
| vs. ) | **LAW IN OPPOSITION TO PLAINTIFF'S** |
| ) | **MOTION FOR PRELIMINARY** |
| Spartanburg County School District Five, ) | **INJUNCTION** |
| the Board of Trustees of Spartanburg ) | |
| County School District Five, and ) | |
| Superintendent Randall R. Gary, in his ) | |
| individual and official capacities, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Defendants, Spartanburg County School District Five ("District"), the Board of Trustees of Spartanburg County School District Five ("Board"), and Superintendent Randall Gary, in his individual and official capacities, respectfully submit this memorandum in opposition to Plaintiff's Motion for Preliminary Injunction. For the reasons set forth below, Plaintiff's motion should be denied.

## I. BACKGROUND

Plaintiff was formerly employed as a teaching assistant at an elementary school in the District. On September 10, 2025, almost immediately after the public announcement that Charlie Kirk had been murdered, Plaintiff made a controversial post on her Facebook page about how his death was worth it in order to have the Second Amendment. To this sentiment she added, "thoughts and prayers." After this post was brought to the District's attention and following a thorough investigation including numerous interviews, the District determined that her post had caused a significant disruption to the business of the school and undermined her ability to continue as an employee. (Exhibit 1, Affidavit of Robert Jackson) Plaintiff had a series of meetings with HR staff and eventually met with Superintendent Dr. Gary. At each meeting, she acknowledged that her

post was inappropriate. Based on the District's investigation, Dr. Gary determined that her actions violated District Policy GBEG on staff conduct and Policy IJNDB regarding technology use. She was not terminated for violating the District's Social Media Guidelines, but for her violations of District Policies and causing disruptions to the school's operations..

After her termination, on September 18, 2025, Plaintiff filed the instant Complaint alleging four causes of action: (1) First Amendment Retaliation pursuant to 42 U.S.C. §1983 against Dr. Gary; (2) Deliberately Indifferent Policies in Violation of the First Amendment pursuant to 42 U.S.C §1983 against the Board and District; (3) Violation of South Carolina Constitution Article I, §2 (Free Speech) against all Defendants; and (4) Wrongful Discharge in Violation of Public Policy against all Defendants.  Defendants filed their Answer and Affirmative Defenses on October 13, 2025. Plaintiff filed her motion for a preliminary injunction on October 15, 2025. The relief she seeks with the injunction is twofold: (1) reinstating her to her position with the District and (2) enjoining the District "from enforcing or relying upon the Social Media Guidelines as a basis for discipline or termination during this litigation.

## II.  ARGUMENT

Preliminary injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy, Inc. v. Motorola, Inc.,* 245 F.3d 335, 339 (4th Cir.2001). Usually, preliminary injunctions "aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending;" *Pashby v. Delia,* 709 F.3d 307, 319 (4th Cir.2013). A district court must apply a rigorous four-part test in determining whether to grant a preliminary injunction. To qualify for such relief, the moving party must show (1) likelihood it will succeed on the merits; (2) likelihood it will suffer irreparable harm in the absence of a preliminary injunction; (3) that the balance of equities tips in its favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7,

20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). The Fourth Circuit no longer recognizes a "flexible interplay" among these criteria. Instead, each requirement must be fulfilled as articulated. *Real Truth About Obama v. FEC,* 575 F.3d 342, 346 (4th Cir.2009), *vacated on other grounds*, 558 U.S. 1089 (2010), with *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.,* 550 F.2d 189, 196 (4th Cir.1977)

Where a mandatory injunction is sought, *i.e.*, an injunction which alters the status quo, such relief is disfavored and warranted only in the most extraordinary circumstances. *In re Microsoft Corp. Antitrust Litigation,* 333 F.3d 517 and 525 (4th Cir. 2003); *De La Fuente v. S.C. Dem. Party,* 164 F.Supp.3d 794, 798 (D.S.C. 2016). As a result, the Court must apply the above requirements and standards for a mandatory preliminary injunction in an even more exacting and searching manner. *Id.* at 798. Plaintiff cannot meet this exacting standard and is not entitled to preliminary injunctive relief.

### 1. **Plaintiff cannot show that her claims are likely to succeed on the merits[1]**.

In Counts One and Two of her Complaint, Plaintiff alleges that she was terminated in violation of her First Amendment right to free speech and that the District's Social Media Guidelines are facially unconstitutional as an overbroad prior restraint on free speech. Plaintiff is required to make a "clear showing" that she is likely to succeed on the merits of her claims. *Winter* at 22. She cannot meet this burden.

---

[1] In her Motion for a Preliminary Injunction, Plaintiff's argument focuses solely on the first two causes of action and does not address the likelihood of success on the merits of counts three or four of her Complaint. Count 3 is her State Constitution free speech claim and its success is related to her success on Count One. Though she does not address Count Four, the District disputes its viability and Plaintiff's ability to demonstrate a likelihood of success on the merits.

### a. **Facial challenge (Count Two of the Complaint)**

First, Plaintiff argues that the District's Social Media Guidelines (ECF No. 10-5) are unconstitutionally overbroad and constitute an impermissible prior restraint. Through the injunction, she seeks to have this Court enjoin the District from enforcing or relying on the Guidelines as a basis for discipline or termination during the course of the litigation. With this argument, Plaintiff misconstrues the basis for her termination.

As explained in Mr. Jackson's affidavit provided herewith and as reflected in Dr. Gary's termination letter (ECF No. 10-4), Ms. Vaughn was not terminated based on any application of the District's Social Media Guidelines. Instead, she was terminated for violating District Board Policies GBEB regarding employee conduct and IJNDB regarding the use of technology which allows for the discipline of staff for off-campus activity involving the inappropriate use of the internet which poses the threat of or interferes with or disrupts the workplace. (Ex. 2, Policies) She violated the staff conduct policy by posting a statement to her Facebook page, seen by colleagues and parents, which was widely perceived as celebrating the death of Charlie Kirk within minutes of news reports that he had been killed. Her post was easily read as sarcastic, glib and cruel. It was polarizing and created division and volatility at the school as noted in Mr. Jackson's affidavit. Her post damaged trust and damaged her effectiveness as a kindergarten teacher assistant and made her continued employment untenable.

Plaintiff only objects to the District's Social Media Guidelines and not the District's actual policies that formed the basis of her termination. Those policies are not overly broad and do not constitute an impermissible prior restraint. Instead, they accurately reflect the constitutional

4

standard balancing a public employee's right to protected free speech with the District's interest in maintaining discipline and harmony as necessary to the operation and mission of the District.

Moreover, even if this court were to determine that the Social Media Guidelines were part of the basis for her termination, the parts of the Guidelines Plaintiff objects to and quotes in her brief are mischaracterized. (See, ECF No. 10, p. 7). Plaintiff misquotes the Guidelines writing that they "insist that – even in their private off-duty posting – employees speak only positively of the Defendant District, insisting that '[e]mployees must be respectful in all communications (by work, image, or other means)', and prohibiting complaints about one's job or the work environment." The Guidelines state that "the following are recommended when using social media" and then provide a bullet point list of things to be mindful of. The end of the Guidelines state that "they are intended to give employees points to consider when using social media tools." The particular bullet point Plaintiff takes out of context begins with a general statement and then contains a more specific recitation of what is considered respectful and professional. It reads in full as follows:

- Employees must be respectful and professional in all communications (by word, image or other means). Employees shall not use obscene, profane, or vulgar language on any social media network or engage in communications or conduct that is harassing, threatening, bullying, libelous, or defamatory or that discusses or encourages illegal activity or inappropriate use of illegal drugs, sexual behavior, sexual harassment, or bullying.

While the Guidelines do recommend that employees not complain about work on social media, they refer to specific complaints like counting down the days left of school on social media as unprofessional and note that an online forum is likely to spread negativity quickly. This bullet point reminds employees to be mindful that students, parents, and the community at large are always watching - a truism reflected by this case. The other bullet points are mostly common-sense recommendations about not posting things one would not want a parent or student to see; getting permission to post on social media about a school club or class; not disclosing confidential,

5

proprietary or copyrighted information; taking special care when posting personal photographs; and taking steps to protect one's own privacy. (ECF No. 10-5) There is nothing impermissibly broad or unconstitutional about these recommendations. They contain examples of conduct and standards that the District could consider as unprofessional for a public school district employee, examples that are both specific and reasonable. The Guidelines are not mandatory and are distinguishable, as explained above, from those found to be impermissible in the case of *Liverman v. City of Petersburg*, 844 F.3d 400 (4th Cir. 2016) cited by Plaintiff in her motion. (ECF No. 10. pp. 5-8) There, the policy in question prohibited any information on social media that would tend to discredit or reflect unfavorably upon the police department, including proscribing any negative comments on the internal operations of the department. As such, the court found that such a prohibition was overly broad and curtailed speech on matters of public import. The policy in *Liverman* was clearly more restrictive and problematic than the recommended Guidelines in this case. Based on the above, Plaintiff cannot clearly show that she would prevail on her claim that the District's Guidelines are unconstitutional and thus, cannot demonstrate likelihood of success on the merits of her second cause of action.

### b. First Amendment Retaliation (Count One)

To establish a claim for retaliation in violation of the First Amendment's free speech protections, a public employee plaintiff must show: (1) that she spoke as a citizen, not an employee, on a matter of public concern; (2) that her interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public; and (3) that there was a sufficient causal nexus between the protected speech and the retaliatory employment action. *Smith v. Frye,* 488 F.3d 263, 267 (4th Cir.2007). In this case, Defendants concede, for purposes of this motion only, the first element of this claim- that Plaintiff, through her Facebook posts, spoke

6

as a citizen and not an employee, on a matter of public concern. However, Plaintiff cannot clearly show that her interests in the expression at issue outweighed the District's interest in the efficient operation of the workplace, a public elementary school.

In analyzing this issue, the Fourth Circuit considers whether a public employee's speech: (1) impaired the maintenance of discipline by supervisors; (2) impaired harmony among coworkers; (3) damaged close personal relationships; (4) impeded the performance of the public employee's duties; (5) interfered with the operation of the institution; (6) undermined the mission of the institution; (7) was communicated to the public or to coworkers in private; (8) conflicted with the responsibilities of the employee within the institution; and (9) abused the authority and public accountability that the employee's role entailed. *Brickey v. Hall*, 828 F.3d 298, 304 (4th Cir. 2016) (quoting *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 317 (4th Cir. 2006)). Ms. Vaughn's Facebook post and the timing of it, according to Mr. Jackson and Ms. Vaughn herself, impaired the harmony among coworkers; it damaged her close relationship with her classroom teacher and other colleagues who were so angry about the post that they could not talk to her; Ms. Vaughn's post and her coworkers' reactions to it impeded and interfered with her performance of her duties leading to her crying openly in front of students and using her work time to write a personal note of apology to a coworker; the post interfered with the operation of the school and the District by taking Dr. Bigby away from her administrative duties and the special career day program at the school and taking Human Resources personnel time and attention away from other matters to conduct an investigation; it absolutely undermined the mission of the school and District by making light of and mocking the death of a public figure in a cruel and hurtful manner.

7

As an educator, Plaintiff held a special public role engaging daily with very young students and parents. She should have recognized that such a post would diminish not only her standing in the community but also that of the school and the District and undermined the District's mission to provide a safe, caring and inclusive learning environment. Regardless of her *post hoc* explanation of her thought process in making the post, at the time of the posting, it was perceived as very negative and divisive and advocating violence. Ms. Vaughn admits that she received negative feedback and that her post was divisive and further admitted to the District that it was inappropriate. (see, ECF No.: 10-3, Vaughn's Facebook Post and comments) While Plaintiff argues that her Facebook account was private, it is clear that a number of her Facebook friends were coworkers and parents who saw the post online before she removed it. Nothing posted to someone's Facebook page should ever be considered private regardless of whether their settings were to set to private or public.

Importantly, the employer need not prove actual disruption, "but only that an adverse effect was 'reasonably to be apprehended.'" *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992), (quoting *Jurgensen v. Fairfax Cnty., Va.*, 745 F.2d 868, 879 (4th Cir. 1984)).[2] Additionally, our courts have recognized that "[p]ublic education is one of the most important public services offered by state government, and the maintenance of a professional and dedicated teaching staff to provide that service continuously ranks among the State's highest concerns." *Durstein v. Alexander,* 629 F.Supp. 3d 408, 425 (S.D. W.V. 2022), quoting *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 158 (4th Cir. 1992).

---

[2] The substantial disruption standard discussed in *Mahanoy* was an application of *Tinker's* holding that "schools have a special interest in regulating on-campus student speech that 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others.'" *See Mahanoy Area Sch. Dist. v. B.L. by & through Levy*, 594 U.S. 180 141 S. Ct. 2038, 2045, 210 L.Ed.2d 403 (2021) (quoting *Tinker*, 393 U.S. at 513, 89 S.Ct. 733). There are fundamental differences in student speech and public employee speech, and thus the burden is not the same.

8

Weighing all of the above, it is clear that District's interests in the efficient operation of the school outweighed Ms. Vaughn's interest in free speech in making a hurtful Facebook comment about the murder of Charlie Kirk. See, *Grutzmacher v. Howard Cnty*, 851 F.3d 332 (4th Cir. 2017) (applying the test to determine whether a former paramedic's Facebook activity outweighed the Department's interest in providing efficient and effective services); *Carey v. Throwe*, 957 F.3d 468 (4th Cir. 2020) (using the test to determine whether former state employee's anonymous blog posts were protected). For these reasons, Plaintiff cannot clearly show that she will likely succeed on the merits of her First Amendment Retaliation claim.

c. **Wrongful Discharge in Violation of Public Policy (Count Four)**

Plaintiff cannot show that her claim for Wrongful Discharge in Violation of Public Policy will likely be successful. In fact, this claim should be summarily dismissed at the motions stage because it is barred as Plaintiff has an existing statutory remedy for an alleged wrongful termination in violation of her First Amendment rights. When a statute creates a substantive right and provides a remedy for infringement of that right, the plaintiff is limited to that statutory remedy and cannot maintain a cause of action for wrongful termination in violation of public policy. *Campbell v. Bi–Lo,* 301 S.C. 448, 392 S.E.2d 477 (Ct.App.1990); *Dockins v. Ingles Markets, Inc.,* 306 S.C. 496, 413 S.E.2d 18 (1992) (finding that where a statutory remedy for wrongful termination exists, the plaintiff may not elect to pursue a wrongful termination in violation of public policy claim in lieu of the existing remedy).

The South Carolina Supreme Court has found that, in the context of the public policy exception, §1983 is an existing remedy that bars an employee from alleging that her discharge violated her constitutional rights under the public policy exception. *Epps v. Clarendon County,* 304 S.C. 424, 405 S.E.2d 386 (1991)(employee alleging an infringement of his

9

constitutional first amendment rights had an existing remedy for wrongful termination for discharge under §1983 and therefore, could not bring wrongful discharge in violation of public policy action based on that claim). Under South Carolina law, a plaintiff cannot bring a cause of action under the public policy exception to at-will employment when "the employee has an existing remedy for a discharge that allegedly violates rights other than the right to the employment itself." *Bauer v. Summey*, 568 F. Supp. 3d 573, 602 (D.S.C. 2021) (finding 42 U.S.C. § 1983 was existing remedy that barred employees from alleging that their discharge violated their constitutional rights under public policy exception to at-will employment in South Carolina). See also, *Strong v. Charleston Cnty. Sch. Dist.,* No. 2:22-CV-1712-BHH, 2023 WL 2042169, at *2 (D.S.C. Feb. 16, 2023)(finding that the existing remedy under §1983 barred the Plaintiff from also alleging that her discharge violated her constitutional rights under the public policy exception). Similarly in this case, because she has alleged wrongful discharge on the grounds of violation of her First Amendment rights and in violation of 42 U.S.C. §1983, Plaintiff is barred from asserting a wrongful termination in violation of public policy cause of action based on the same facts. Thus, she cannot demonstrate a likelihood of success on the merits of this cause of action. Because she cannot clearly show a likelihood of success on the merits for any of her causes of action, the court need not consider the remaining *Winter* factors.

### 2. Plaintiff will not suffer immediate, irreparable harm if her injunction is not granted

For the second factor in determining whether to issue a preliminary injunction, a plaintiff must make a clear showing that she is likely to be irreparably harmed if preliminary relief is denied. To meet this test, the party must show more than a mere possibility of harm. *Winter,* 555 U.S. at 22. While courts have held that the loss of First Amendment rights constitutes irreparable

harm, *Newsom v. Albemarle Cty. Sch. Bd.,* 354 F.3d 249, 261 (4th Cir.2003), merely asserting a constitutional claim "is insufficient to automatically trigger a finding of irreparable harm." *KM Enters., Inc. v. McDonald,* No. 11–cv–5098 (ADS)(ETB), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) (quoting *Donohue v. Paterson,* 715 F.Supp.2d 306, 315 (N.D.N.Y.2010)); *see also* *297 *Pub. Serv. Co. of N.H. v. Town of West Newbury,* 835 F.2d 380, 382 (1st Cir.1987). The Fourth Circuit has held that within the context of constitutional violations, "a plaintiff's claimed irreparable harm is 'inseparably linked' to the likelihood of success on the merits." *WV Ass'n of Club Owners & Fraternal Servs., Inc. v. Musgrave,* 553 F.3d 292, 298 (4th Cir.2009); *Y.K. Enters., Inc. v. City of Greensboro,* C/A No. 1:07-cv-0289, 2007 WL 2781706, at *3 (M.D.N.C. Sept. 21, 2007); *Vollette v. Watson*, C/A No. 2:12-cv-231, 2012 WL 3026360 at *20 (E.D.V.A July 24, 2012) .

Additionally, Plaintiff would not be irreparably harmed if she were not reinstated to her prior position with the District because she has an adequate remedy at law in the form of damages for back pay and other compensation if she is later found to have been wrongfully terminated. *See*, *Greer v. S.C. Wildlife & Marine Res. Dep't,* 632 F. Supp. 903, 905 (D.S.C. 1986)(recognizing the Supreme Court's admonition in *Sampson* that injunctive relief in a governmental employee case should only be exercised in extreme cases and its finding that neither loss of reputation, and the attendant emotional problems, nor loss of income, afforded a basis for a finding of irreparable injury); *Rogers v. Comprehensive Rehab. Assocs., Inc.,* 808 F. Supp. 493, 498 (D.S.C. 1992) (holding that the plaintiff will not suffer irreparable injury in the absence of an injunction because her only apparent loss is an economic loss which normally, standing alone, cannot constitute irreparable harm.)

In this case, because Ms. Vaughn has failed to clearly show that she would likely prevail on the merits, for the reasons argued above, the same holds true for her argument that she would likely suffer irreparable harm. The availability of an adequate legal remedy alone should prevent the Plaintiff from obtaining preliminary injunctive relief.

### 3. The Balance of Equities and Public Interest Do Not Favor the Granting of an Injunction

The third and fourth prongs of the preliminary injunction standard require a plaintiff to demonstrate that the balance of equities tips in her favor and that a preliminary injunction is in the public interest. She cannot satisfy either of these prongs.

Plaintiff seeks a disfavored mandatory injunction that would compel her to be reinstated as a kindergarten teacher assistant and would prohibit the District from using the Guidelines as a basis for disciplining employees during the course of the litigation. As to the second request for relief, the District has already noted that the Guidelines are not used to make disciplinary or termination decisions but rather are suggested best practices and recommendations provided to employees to assist them in avoiding the pitfalls of unprofessional social media activity. Therefore, this request is baseless.

As to her reinstatement, based on the absence of a clear showing of irreparable harm, and at this preliminary stage of the litigation, it would not be equitable or in the public interest to require the District to reinstate Plaintiff to her position. As noted above, Plaintiff's alleged economic and reputational loss is insufficient to constitute irreparable harm. In terms of the balance of equities and public interest, her reinstatement would do nothing to further public interest and would likely harm the District and its efficient provision of educational services to the youngest in the community.

### III. CONCLUSION

For the foregoing reasons, the District respectfully contends the Plaintiff has failed to meet the exacting requirements for the mandatory preliminary injunction requested in this case, and the Plaintiff's motion should be denied.

Respectfully submitted,

**HALLIGAN MAHONEY WILLIAMS SMITH FAWLEY & REAGLE, PA**

By: s/ Susan M. Fittipaldi
Allen D. Smith, Fed. I.D. No. 5465
asmith@hmwlegal.com

Susan M. Fittipaldi, Fed. I.D. No. 7087
sfittipaldi@hmwlegal.com

P.O. Box 11367
Columbia, SC 29211
(803) 254-4035

**Attorneys for Defendants**

October 29, 2025
Columbia, South Carolina